**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota (msirota@coleschotz.com)
Felice R. Yudkin. (fyudkin@coleschotz.com)
Jacob S. Frumkin (jfrumkin@coleschotz.com)
Matteo Percontino (mpercontino@coleschotz.com)
Rebecca W. Hollander (rhollander@coleschotz.com)

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>CHRISTOPHER & BANKS CORPORATION, *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 21-10269 (ABA)<br><br>Jointly Administered |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) CONVERTING THEIR CHAPTER 11 CASES TO CASES UNDER CHAPTER 7, (II) ESTABLISHING A DEADLINE FOR FILING FINAL CHAPTER 11 FEE APPLICATIONS, AND (III) GRANTING RELATED RELIEF**

Christopher & Banks Corporation and its subsidiaries (collectively, the "**Debtors**") hereby submit this motion (this "**Motion**"), pursuant to section 1112(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1017(f) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for the entry of an order, substantially in the form

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Christopher & Banks Corporation (5422), Christopher & Banks, Inc. (1237), and Christopher & Banks Company (2506). The Debtors' corporate headquarters is located at 2400 Xenium Lane North, Plymouth, Minnesota 55441.

submitted herewith (the "**Proposed Order**"), (i) converting each of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, effective as of April 19, 2021 (the "**Conversion Date**"), (ii) establishing a deadline for filing final chapter 11 fee applications, and (iii) granting related relief. In support of this Motion, the Debtors rely on the contemporaneously submitted declaration of Kara Johnson and respectfully state as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory bases for the relief requested herein are section 1112(a) of the Bankruptcy Code and Bankruptcy Rule 1017(f).

## PRELIMINARY STATEMENT

4.  The Debtors filed these chapter 11 cases on January 13, 2021 with the intent to conduct a sale process with respect to their eCommerce business and to liquidate the inventory in their 449 retail stores. As the Debtors explained to the Court at the January 15, 2021 "first day hearing" in these chapter 11 cases, the Debtors believed that the simultaneous sale and wind down of the Debtors' business operations was necessary to conserve liquidity and maximize the value of the Debtors' assets after the COVID-19 pandemic forced the closure of the Debtors' stores in March of 2020, causing significant disruption to the Debtors' business and adversely impacting their financial condition.

5.  Although the Debtors were hopeful that they would be able to confirm a plan of liquidation, and have made every effort to maximize the solvency of their estates, they knew—and have been transparent with the Court and their constituents from the outset of these chapter 11 cases—that such a goal might not be attainable.

6.  As of the date hereof, the Debtors have completed the liquidation sales in their retail locations and closed on the sale of substantially all of their remaining assets to ALCC, LLC and/or one or more authorized designees thereof (collectively, the "**Buyer**").  Moreover, both the general bar date and the administrative bar date have passed.  Having reviewed the administrative claims filed and/or otherwise asserted in these chapter 11 cases and compared them to the assets available for distribution, the Debtors, after consultation with their advisors, have determined that it is in the best interests of their estates and creditors to convert their chapter 11 cases to cases under chapter 7.

## BACKGROUND

A.  **General Background**

7.  On January 13, 2021 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

8.  The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 45].

9.  On January 15, 2021, the Court entered an Order approving the retention of Omni Agent Solutions as the Debtors' claims and noticing agent [Docket No. 49].

10. On January 26, 2021, an Official Committee of Unsecured Creditors (the "**Committee**") was appointed by the Office of the United States Trustee [Docket No. 118].

11. Information regarding the Debtors' business, capital structure, the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Keri L. Jones in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 18] (the "**First Day Declaration**") which is incorporated herein by reference.

B. **Post-Petition Use of Cash Collateral**

12. On the Petition Date, the Debtors filed that certain *Motion for Interim and Final Orders (I) Authorizing Use of Cash Collateral and Affording Adequate Protection; (II) Modifying Automatic Stay; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [Docket No. 17] (the "**Cash Collateral Motion**"), which, among other things, sought Court authority to use the Debtors' pre-petition lenders' cash collateral in accordance with an agreed-upon budget. On January 15, 2021, the Court entered an order granting the Cash Collateral Motion on an interim basis [Docket No. 56] and, on February 8, 2021, the Court entered an order granting the Cash Collateral Motion on a final basis [Docket No. 189] (the "**Final Cash Collateral Order**").[2]

13. The Final Cash Collateral Order provided, among other things, for the Debtors to fund certain Carve-Out Reserve Accounts to ensure that the Debtors could make certain payments on account of Estimated Fees and Expenses incurred by Professional Persons when they became due. Final Cash Collateral Order ¶ 18. The Debtors have funded the Carve-Out Reserve Accounts pursuant to the Final Cash Collateral Order throughout the chapter 11 cases.

---

[2] Capitalized terms used but not defined in this Section shall have the meanings ascribed to them in the Final Cash Collateral Order.

14. Moreover, in furtherance of the Debtors and the Committee's attempt to provide for the administrative solvency of the Debtors' estates, the Final Cash Collateral Order provided for a Section 503(b)(9) Claims Reserve in an amount equal to the aggregate of: (x) the first $200,000 of expense savings realized by the Debtors under the Budget (excluding savings realized by the Debtors under the Statutory Committee's Professional Fees line item under the Budget), if any, plus (y) all savings realized by the Debtors under the Statutory Committee's Professional Fees line item under the Budget, if any.  Final Cash Collateral Order ¶ 55.

15. On February 12, 2021, pursuant to the Budget, the Debtors repaid the ABL Obligations in full. On March 2, 2021, in connection with the closing of the Sale, the Debtors satisfied the remaining Term Loan Obligations and the Vendor Program Obligations, which obligations were assumed liabilities under the Stalking Horse APA (defined below).

C. **Disposition of the Debtors' Assets and Wind Down Efforts**

16. As set forth in the First Day Declaration, the Debtors' paramount goal in these chapter 11 cases has been to maximize the value of their estates for the benefit of their creditor constituencies and other stakeholders through the sale of their business and remaining assets.

*17.* In furtherance of that goal, on the Petition Date, the Debtors filed that certain *Motion for Entry of Interim and Final Orders (A)(1) Confirming, on an Interim Basis, that the Store Closing Agreement is Operative and Effective and Authorizing, on a Final Basis the Debtors to Assume the Store Closing Agreement, (B) Authorizing and Approving Store Closing Sales Free and Clear of All Liens, Claims, and Encumbrances, (C) Approving Dispute Resolution Procedures, and (D) Authorizing Customary Bonuses to Employees of Stores* [Docket No. 16] (the "**Store Closing Motion**"). On January 15, 2021, the Court entered an Order granting the Store Closing Motion on an interim basis [Docket No. 62], and, on February 8,

2021, the Court entered an order granting the Store Closing Motion on a final basis [Docket No. 188] (collectively, the "**Store Closing Order**").  Pursuant to the Store Closing Order, the Debtors conducted liquidation sales at their 449 retail locations in order to maximize the value of their estates.  The store closing sales concluded in February 2021.

18. During the post-petition period, the Debtors continued to market their remaining assets for sale with the assistance of their investment banker, B. Riley Securities, Inc. and ultimately entered into a stalking horse asset purchase agreement with the Buyer (the "**Stalking Horse APA**").  The Debtors negotiated the Stalking Horse APA based upon a budget of their anticipated post-petition expenses and with the goal of consummating a transaction that would render their estates administratively solvent.  After the negotiation of the Stalking Horse APA, the Debtors and their advisors continued to market the Debtors' assets to third parties, but no other viable purchasers emerged.

19. On February 23, 2021, the Court entered an order [Docket No. 266] (the "**Sale Order**") approving the sale (the "**Sale**") of substantially all of the Debtors' business assets to the Buyer.  The Sale closed on March 2, 2021, effective as of March 1, 2021. As part of the Sale, the Buyer purchased all of the Debtors' remaining assets, including their books and records.

20. After the closing of the Sale, the Debtors began to wind down their estates and explore alternatives for the ultimate disposition of the chapter 11 cases.  Among other things, the Debtor filed, and the Court granted, a *Motion for Entry of an Order Establishing a Bar Date for Filing of Administrative Expense Claims, Approving Form, Manner and Sufficiency of Notice Thereof, and Approving the Administrative Expense Form* [Docket No. 262], setting March 24, 2021 as the deadline (the "**Administrative Bar Date**") to file certain administrative claims, including claims under 11 U.S.C. § 503(b)(9), in the Debtors' chapter 11 cases.

21. While waiting for the Administrative Bar Date to pass, the Debtors filed, and the Court granted, a *Motion of Christopher & Banks, Inc. for Entry of an Order, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, Approving the (I) Termination of the 401(k) Plan and (II) Implementation of Procedures in Connection Therewith* [Docket No. 273] and a *Motion for Entry of an Order Authorizing the Debtors to File a Form 15 With the Securities and Exchange Commission to Deregister Securities* [Docket No. 274] in order to facilitate the wind down of their estates and in recognition of the fact that termination of the Debtors' 401(k) plan and deregistration of the Debtors' securities will need to be completed whether by the Debtors, a chapter 7 trustee, or an estate fiduciary under a plan.

22. Separately, the Debtors' finance personnel began filing final sales and use tax returns and the Debtors are in the process of amending their schedules of assets and liabilities to incorporate certain pre-petition tax claims that they became aware of during the post-petition period. The Debtors also worked with the Buyer and its third-party insurance providers to wind down their medical and dental insurance plans and provide for the payment of claims incurred during the plan periods but not reported until the runout period.

23. At the same time, the Debtors and their advisors engaged in extensive, good-faith negotiations with the Committee and the Buyer over the manner and terms of the Debtors' exit from chapter 11. Unfortunately, at this time, the Debtors expect that the allowed administrative and priority claims (which include approximately $2 million in social security contributions that the Debtors deferred during the pre-petition period under the CARES Act) exceed the assets available to pay such expenses and fund a plan process. This is due in part to certain unexpected expenses that arose during the post-petition period that exceeded amounts budgeted and contemplated during the negotiation of the Stalking Horse APA. In total, the Debtors estimate a

$6 million shortfall to confirming a plan.³ In light of the Debtors' expectation that allowed administrative and priority claims will exceed assets available for distribution, the Debtors, have determined that conversion is in the best interests of the Debtors' estates and creditors.

## RELIEF REQUESTED

24. By this Motion, the Debtors request entry of the Proposed Order, pursuant to section 1112(a) of the Bankruptcy Code and Bankruptcy Rule 1017(f), (i) converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code effective as of the Conversion Date, (ii) establishing a deadline for filing final chapter 11 professional fee applications, and (iii) granting related relief.

## BASIS FOR RELIEF

25. Section 1112(a) of the Bankruptcy Code provides that a debtor may convert a case to chapter 7 as a matter of right. *See* H.R. Rep. No. 95-595, 1st Sess. 405 (1977) ("Subdivision (a) gives the debtor an absolute right to convert a voluntarily commenced chapter 11 case in which the debtor remains in possession to a liquidation case"); S. Rep. No. 95-989, 95th Cong., 2d Sess. 117 (1978) (same); *see also Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142 (5th Cir. 1988) (noting that "a debtor has the absolute right to convert [its] Chapter 11 case to a Chapter 7 case"). The only three circumstances where a debtor is precluded from exercising that right are where (i) the debtor is not a debtor in possession; (ii) the case was originally commenced as an involuntary case under chapter 11; or (iii) the case was converted to a case under chapter 11 other than at the debtor's request. 11 U.S.C. § 1112(a). None of those exceptions is applicable in these cases. Therefore,

---

³ Although approximately $10 million in administrative claims have been filed in the Debtors' chapter 11 cases, the Debtors have not reconciled those claims and estimate, for the purposes of calculating the above-referenced shortfall, that approximately $2 million in administrative claims will ultimately be allowed.

8

the Debtors are entitled, as an absolute right, to convert their chapter 11 cases to cases under chapter 7.

26. The Debtors respectfully submit that conversion of these chapter 11 cases to cases under chapter 7 is in the best interests of the Debtors' estates and creditors. Although there is some cash remaining in the Debtors' estates and the Debtors will continue to receive certain amounts reconciled pursuant to that certain Transition Services Agreement entered into between the Debtors and the Buyer in connection with the Sale, the Debtors are unable to fund their ongoing administrative expenses or prosecute a chapter 11 plan. Accordingly, the Debtors believe there is no reasonable likelihood that the Debtors could confirm and consummate a chapter 11 plan, and respectfully submit that a chapter 7 trustee will be able to more efficiently and effectively bring these cases to their conclusion.

27. Accordingly, the Debtors respectfully request that the Court enter an order converting the Debtors' cases from chapter 11 to chapter 7, effective as of the Conversion Date.

28. The Debtors further request that the Court establish a deadline of thirty (30) days after the Conversion Date for Professionals to file their final fee applications (the "**Final Fee Bar Date**"). This will enable the Debtors' estates to definitively determine the final amount owed to Professionals for chapter 11 expenses to be paid from the Carve-Out Reserve Accounts (with any remaining balance therein being paid over to the Buyer in accordance with the Final Cash Collateral Order and Stalking Horse APA, respectively).

29. The Debtors further request that the Court discharge Omni Agent Solutions, the Debtors' retained claims and noticing, from its engagement upon the Conversion Date.

## **NOTICE**

30. Notice of this Motion has been given to (i) the Office of the United States Trustee for Region 3; (ii) counsel to the Committee Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017, Attn: Bradford J. Sandler, Robert J. Feinstein, Paul J. Labov, and Steven W. Golden and Kelley Drye & Warren LLP, One Jefferson Road, Second Floor, Parsippany, NJ 07054, Attn: James S. Carr and Dana P. Kane, (iii) Simon Property Group, Inc., 225 West Washington Street, Indianapolis, IN 46204, Attn: Ronald M. Tucker; (iv) counsel for the Debtors' prepetition senior secured lenders and Buyer, Riemer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, New York 10036, Attn: Steven E. Fox; (v) the Internal Revenue Service; (vi) the United States Attorney's Office for the District of New Jersey; (vii) the Office of the Attorney General for the State of New Jersey; (viii) the United States Securities and Exchange Commission; (ix) counsel to all known secured creditors; (x) all parties that have filed notices of appearance in these chapter 11 cases (collectively, the "**Notice Parties**"). The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

[remainder of page left intentionally blank]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order: (i) converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, effective as of the Conversion Date, (ii) establishing a deadline for filing final chapter 11 fee applications, and (iii) granting such other and further relief as the Court may deem just and proper.

DATED:  April 7, 2021                   Respectfully submitted,

**COLE SCHOTZ P.C.**
*Attorneys for Debtors*
*and Debtors in Possession*

*/s/ Michael D. Sirota*
Michael D. Sirota (msirota@coleschotz.com)
Felice R. Yudkin (fyudkin@coleschotz.com)
Jacob S. Frumkin (jfrumkin@coleschotz.com)
Matteo Percontino (mpercontino@coleschotz.com)
Rebecca W. Hollander (rhollander@coleschotz.com)
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Telephone:  (201) 489-3000
Facsimile:  (201) 489-1536